The facts sufficiently appear in the opinion.
In this case there are cross appeals which will be considered together. The action was brought to recover taxes for the year 1889 upon the same lands as those under consideration in the cases of State v. CentralPac. R. Co., 21 Nev. 247. The questions presented concerning the taxability of a possessory claim to surveyed and unsurveyed lands, within the defendant's land grant, are the same as those presented in the cases mentioned, which will be followed here. *Page 263 
The only other question involved is that concerning a plea of estoppel by a former judgment, set up by the defendant.
By this plea, and the proofs, it appeared that an action had been commenced against the defendant to recover the taxes due upon this land, as well as a large amount of other property assessed to it in the same year; that upon the trial of that action the district attorney dismissed as to all of said lands, no evidence was offered concerning them, and the case then went to judgment upon the issues raised concerning the taxes due upon the other property. Does this constitute a bar to the maintenance of this action?
In actions between individuals, a single cause of action, either upon contract or for a tort, will support but one action. If a single cause is split up, and two or more actions brought upon it, a judgment entered in one of them is held to be res adjudicata as to the whole cause of action, and will be a bar to the maintenance of the others. (Freem. Judgm. Sec. 238; Black, Judgm. Sec. 734.) This is the general rule, not by reason of any statutory provision to that effect, but as a general principle of the common law, which, subject to certain exceptions unnecessary to be noticed here, is usually recognized and enforced.
This principle, however, like all common law rights which have not been perpetuated by our constitution or the constitution of the United States, is subject to legislative control and direction, and may be annulled, or certain cases excepted from its operation, at the pleasure of that body. It is claimed that this has been done by Gen. Stat. Sec. 1108 (re-enacted, Stat. 1891, p. 135), which after enumerating certain defenses which a defendant in an action to recover taxes may make by answer, and which do not include that of a former recovery, further provides that "no other answer shall be permitted."
On the other hand it is contended that the legislature has no power under the constitution to exclude anything in a tax action that would be available as a defense in other actions, and although there has never been any direct decision upon the point in this court, it must be admitted that it has several times been intimated that the legislature has no such power, and that the defense of a former recovery is as valid in such actions as in any other. We are of the opinion, however, that a careful consideration of the principles governing the assessment and *Page 264 
collection of taxes will show that in regard to some defenses it does have this right, while perhaps us to others it does not.
The right to collect revenue for the support of the government is one of the highest attributes of sovereignty, and belongs inherently to every political community. "The legislature of every free state will possess it under the general grant of the legislative power, whether particularly specified in the constitution among the powers to be exercised by it or not." (Cooley Const. Lim. 6 ed. 587.) Chief Justice Marshall, in the celebrated case ofMcCulloch v. Maryland, 4 Wheat. 428, uses this language: "The power of taxing the people and their property is essential to the very existence of government, and may be legitimately exercised on the objects to which it is applicable to the utmost extent which the government may choose to carry it." This right to tax, which from necessity is inherent in every form of government, is vested with us in the legislature; and is unlimited, except as restricted by the constitution of our state or that of the United States. (Gibson v. Mason, 5 Nev. 283, 305;People v. Seymour, 16 Cal. 332, 342;Wisconsin Cent. R. Co. v. Taylor Co.,52 Wis. 37, 86.) "It is for the legislature to decide what persons and property shall be reached by the exercise of this function, and in what proportions and by what processes and instrumentalities taxes shall be assessed and collected." (St. Louis v. Ferry Co., 11 Wall. 423, 429.)
These principles being admitted, or established, we may direct our attention at once to the constitution, to ascertain whether any provision therein contained requires that the defense set up in this action shall be permitted, or forbids the legislature from excluding it.
It will be observed that the plea we are considering does not allege that the taxes sued for were not properly levied or assessed or a proper charge against the defendant — in fact we have determined that a part of them are proper — nor does it assert that they have been paid. The defense is one purely technical, and founded on what was clearly an irregularity upon the part of the district attorney in the management of the former case. The only suggestion made is that the statute excluding it is in conflict with section 8, art. 1, of the constitution of this state, which declares that "no person shall * * * be deprived of life, liberty, or property, without due process of law." *Page 265 
But it may be confidently asserted that this provision is only applicable to a limited extent to a proceeding to collect taxes. It certainly does not mean that there must necessarily be a decree or judgment or any action of a court whatever, to authorize the legal taking of property for taxes. (State v. Allen, 2 McCord, 55, 60;McMillen v. Anderson, 95 U. S. 37, 41;Davidson v. New Orleans, 96 U. S. 97,102.) If such were the case, the summary proceedings for their collection in such general vogue throughout the states, and now by our statute applicable to all cases where the taxes due amount to less than three hundred dollars, would not be admissible. But such summary methods are sanctioned by both precedent and practice, and are held not to conflict with the constitution. (McCarroll v.Weeks, 5 Hayw. 246, 253; Cooley, Const. Lim. 639; Cooley, Tax'n, 302; Black, Tax Titles, Sec. 44; 1 Blackw. Tax Titles, Secs. 75-100.) The only limitation that seems to be placed upon the power of the legislature to provide for such a system, is that the legislature cannot direct that the purchaser at such a sale shall be put in possession forcibly, and without a judicial hearing. (Calhoun
v. Fletcher, 63 Ala. 574, 582; Black, Tax Titles. Sec. 226; Blackw. Tax Titles, Sec. 75.) While the cases are not all in harmony as to just how far the legislature may go in dispensing with all action of the courts in the collection of taxes, it may be confidently asserted that such statutes will be held constitutional if by any means the taxpayer is still left the privilege of appealing to the courts for the protection of his substantial rights in the premises. All technicality may be disregarded, and only the most meritorious objections allowed to constitute a defense to the titles transferred by such proceedings. Upon this point Mr. Blackwell in his treatise on Tax Titles, Sec. 75, makes this summary: "Practically, the result of the cases is as follows: (1) Proper provision for notice to the taxpayer must be made. It is not within the power of the legislature to dispense with that, nor to cure its absence. (2) If the taxes are paid before sale the proceedings are void, and no legislature can give title by, or cure title founded on a sale, after the taxes for which the land was ostensibly sold were paid. (3) In other respects the legislature may enact the conditions of sale, and may provide as to the manner of all proceedings." Perhaps this statement of the law is not sufficiently guarded in some respects, *Page 266 
but a review of the cases will show that the legislature is vested with a large amount of discretion in determining what shall or shall not constitute a defense to a proceeding to collect taxes.
A statute of the United States, providing for the imposition and collection of direct taxes, authorized the officer selling under summary process to issue a certificate to the purchaser which was to be prima facie
evidence of the regularity and validity of the tax sale, and of the title of the purchaser under it, and enacted that it should only be affected by proof that the lands were not subject to the tax, or that it had been paid previous to the the sale, or the land redeemed subsequently. This statute was reviewed in De Treville v. Smalls,98 U. S. 517, and strictly upheld. It is there said (page 525): "Besides, all possible attack upon the prima facies
of the certificate was limited by the express provisions of the act, which enacted, as before stated, that it should only be affected as evidence of the regularity and validity of the sale, by establishing the fact that the property was not subject to taxes, or that the taxes had been paid previous to the sale, or that the property had been redeemed. This left to the owner of lands subject to the tax every substantial right. It was his duty to pay the tax when it was due. His land was charged with it by act of congress, not by the commissioners; and the proceeding ending in a sale was simply a mode of compelling the discharge of his duty. All his substantial rights were assured to him by the permission to show that he owed no tax, that his land was not taxable; that he had paid what was due, or that he had redeemed his land after sale. He was thus permitted to assert everything of substance — everything except mere irregularities. We do not feel at liberty to disregard the plain intention of the acts of congress. We are not unmindful of the numerous decisions of state courts which have construed away the plain meaning of statutes providing for the collection of taxes, disregarding the spirit and often the letter of the enactments, until of late years the astuteness of judicial refinement had rendered almost inoperative all legislative provisions for the sale of land for taxes. The consequence was that bidders at tax sales, if obtained at all, were mere speculators. * * * To meet this tendency of judicial refinement very many states have of late adopted very rigid legislation. The acts of congress we are considering must have had it in view. Hence the stringent provisions they *Page 267 
contain. They declare, in effect, that the certificate of the commissioner's sale shall be evidence of compliance with the preliminary requisites of the sale, and that this evidence shall be rebutted only by proof of one or the other of three specified things. There is no possible excuse for not enforcing such statutes according to their letter and spirit." This ruling was again affirmed in Keeley
v. Sanders, 99 U. S. 441.
In Iowa, a statute providing for summary sales of land for taxes enacted that the deed issued upon such sale should be prima facie evidence of certain facts, and conclusive evidence of others, which, of course, had the effect of declaring that the latter facts should not constitute any defense in an action between the owner of the land and the purchaser at a tax sale. In passing upon the validity of such legislation, the court, inAllen v. Armstrong, 16 Iowa, 508, 512, says: "There are minor matters in regard to the mode or manner of exercising the power, which may be dispensed with, and, consequently, whose observance it is within the power of the legislature to provide, may be presumed from certain evidence, or certain other facts. * * * After a careful examination of the provisions of the section under consideration (section 784), in the light of the general principles of the law applicable to such subjects, we must say that there are some matters so vital and essential to any valid exercise of the taxing power, and in relation to which the deed is by our law madeconclusive evidence, that the law is, as to these of questionable validity." In McCready v. Sexton,29 Iowa, 356, 389, in an attempt to sum up the law a little more definitely, it is said that the assessment, the tax levy, the tax warrant authorizing the sale, the sale itself, were essential to the exercise of the taxing power; that the legislature cannot dispense with an observance of these essential and jurisdictional steps, but that "every other provision of every revenue law may safely be said to be directory only, and not essential to the exercise of the taxing power;" and that consequently the legislature may dispense with them altogether, or provide that their non-observance shall not constitute any defense.
In Abbott v. Lindenbower, 42 Mo. 162; Id. 46 Mo. 291, a similar statute came under consideration, For the purpose of invalidating the tax deed, which the plaintiff had placed in evidence, the defendant there offered to prove (1) that the land had not been duly assessed for the year 1863 at the time and *Page 268 
in the manner required by law; (2) that the land was not assessed in the name of the real owner, or any former owner, or any tenant or occupant of said land; (3) that all the land in the county had not been assessed, but much of it omitted from the assessment of that year; (4) that the tax book was not made out nor delivered to the collector in the manner or at the time prescribed by law; (5) that the collector did not proceed with collection of such tax book, nor give notice of the time and place where he would receive the taxes assessed for said year, as required by law; (6) that the delinquent list was not made out and returned by the collector at the time or in the manner prescribed by law; (7) that the collector did not give, nor was the judgment rendered upon, proper notice of his application for judgment against said land for the taxes and costs due thereon; (8) that no precept for the sale of said land had been issued by the clerk; (9) that the land was not sold at the court house door, nor in the smallest subdivision into which it could be divided, but was sold in gross. All these offers were excluded and the court held properly so, except as to the second and seventh, which it was said were essential and jurisdictional, and such as the legislature could not dispense with. "With regard to the other matters of evidence above enumerated [except those two] we are inclined to think they were not essential pre-requisites to the lawful taxing power in the state, and that the act cannot be declared unconstitutional for the reason that it makes the deed conclusive evidence that all those things had been rightly done. They were matters of form which might be taken against him by default." (42 Mo. 168.) Upon the second appeal, in reply to the objection that the statute was altogether void, the court said (46 Mo. 296): "Counsel insist that we should require the same amount of evidence to sustain the sale as if there were no statutory provision concerning the effect of the deed, and pronounce tax sales to be against common justice and right, and unworthy of favor. It is against common justice and right for a portion of the people to shirk the payment of taxes, and thus throw an additional burden upon the better disposed; and courts should give effect to all just legislative provisions for the subjection of all property to an equal burden."
In Gibbs v. Dortch, 62 Miss. 671, a statute which directed that "no such conveyance or list [to be made by the officer *Page 269 
selling for delinquent taxes] shall be invalidated, nor shall any defense be available against the title thus conveyed in any court of this state, except by proof that the taxes for which said lands were sold had been paid or tendered to the proper officer before sale," was upheld, except that it might also be shown in defense that there had been no assessment of the property, which was required by the constitution. (See also, People v. Wilkerson,1 Idaho, 619; People v. Mayor, etc., 4 N, Y. 419, and note, 55 Amer. Dec. 266, 286.) If the legislature has the power within certain limits to prescribe what shall not be a defense as against a title transferred by a sale for delinquent taxes, where the taxpayer has had no previous opportunity for contesting the tax or the proceedings under it, it is perhaps hardly necessary to add that it may certainly do so under such a system as the one we are considering, where the defense is to be made prior to the judgment or sale.
In the cases of State v. Min. Co.,13 Nev. 289; 15 Nev. 234, it was conceded by counsel, and assumed by the court, that taking judgment for a part of the taxes due from a taxpayer under circumstances smilar to those existing here, would be a bar to the maintenance of another action for the balance due; but the mind of the court was not directed to the statute which we have been considering, and the cases do not determine the point involved here. Still, in view of those cases, and of certain expressions to be found in other cases as to the authority of the legislature to exclude any defense in tax cases, we have examined the matter at greater length than we should otherwise have done. It may be added that by our constitution, by the enabling act, and without these by paramount law (VanBrocklin v. Tennessee, 117 U. S. 151), the state has no right to tax property of the United States, and if this statute could be so construed as to prohibit setting up the defense that such property is exempt, it would, to that extent, be null and void. (See State v. CentralPac. Ry. Co., 21 Nev. 94, and State v. Same
21 Id. 247.) But this sufficiently appears from the principles of constitutional law already referred to.
Revenue — money is what the state needs and must have to maintain its credit and keep the machinery of government in motion. Taxes are assessed upon the property of the people for the purpose of obtaining it. While the constitution requires that property shall not be taken from the owner, either for taxes *Page 270 
or anything else without clue process of law, that provision, as applied to the collection of taxes, requires the observance only of the most essential and fundamental steps. While the rights of the individual must be protected, the government should not be unnecessarily hampered in its efforts to make collections, and certainly a law should not be declared to be beyond the power of the legislature, unless it appears without reasonable doubt that that body has exceeded the authority conferred upon it by the constitution. We know of no reason why a judgment entered for a part of a cause of action should not be a bar to another action, in tax cases as well as in others, except that the legislature has ordained otherwise, and in that respect the will of that body is supreme. Certainly it is to the interest of all that tax proceedings should be as simple, as inexpensive and as certain as possible, but as stated in De Treville v. Smalls, supra, and admitted by Judge Cooley (Cooley, Tax'n, 354), the history of legislation upon this subject exhibits a continual struggle between the legislatures and the courts — the former endeavoring to clear the matter from technicalities, and the latter hedging it about by judicial refinement. Our own state is no exception to this tendency, but we do not think it should be carried further in that direction. We think the power of that body to exclude the defense offered in this case is clear and unmistakable, and that it is the duty of the court to follow the law as so established.
The judgment and the orders overruling the motions for new trial are affirmed.