State ex rel. Wright v. St. Louis, Iron Mountain & Southern R'y Co.

THE STATE *ex rel.* WRIGHT, *Collector,* v. THE ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, *Appellant.*

| 82 683 |
| 43a 299 |

**Taxes:** ASSESSMENT OF RAILROAD PROPERTY. Under the act of 1871 (Laws, p. 56; 2 Wag. Stat., p. 1214 b, art. 2,) county assessors were · not authorized to assess the lands of railroad companies situated within their counties, but all railroad property was required to be · valued and apportioned, as provided by said act, by a special board consisting of the State Treasurer, State Auditor and Register of: Lands, and the county courts of the several counties in which such property was situated levied taxes for county purposes upon the ap_ portionment certified to the county clerks of such counties by such special board, as required by law.

*Appeal from Scott Circuit Court.*—HON. J. D. FOSTER,. Judge.

REVERSED.

*D. L. Hawkins* with *Bennett Pike* for appellant.

(1) The petition does not state facts sufficient to con-- stitute a cause of action. 2 Wag. Stat., p. 1214 c; *Wellshear v. Kelley,* 69 Mo. 343. (2) The assessor of Scott county had no authority or power, at the time of the alleged assessment of said lands, to-wit: for the years 1872, 1873, 1874, 1875 and 1876, to assess the same, and the assessment is, therefore, wholly void. *Allen v. Armstrong,* 16 Ia. 508; *Abbott v. Lindenbower,* 42 Mo. 162. (3) The evidence conclusively shows that the land was not assessed to the owner, or to any one who ever had been the owner, and. the assessment is, therefore, utterly void. Cases cited, *supra.*

*Arnold & Hunter* for respondent.

RAY, J.—This suit was instituted by the collector to· recover taxes alleged to be due and unpaid upon lands in Scott county, described in the petition, for the years 1872, 1873, 1874, 1875 and 1876, under the delinquent tax law of

1877. The petition states substantially that under and by virtue of the laws of Missouri the officers and agents of Scott county and the State, having legal authority to do so, laid and assessed taxes upon the real estate described, stating the amount of taxes assessed against each tract, the different funds for which taxes were levied, and that the taxes amounted in the aggregate to $1,611.29, for which judgment was asked. Defendant's answer is a general denial.

Before the trial of the cause, plaintiff, by leave of the court, amended the petition by alleging " that immediately after the taking effect of the back tax law of 1877, the collector of the county of Scott returned to the clerk of the county court of said county as delinquent the lands described in the petition, and thereupon, within sixty days thereafter said clerk made out the same into a 'back tax book' and delivered it to said collector, and that all of said lands remained unredeemed on the 1st day of January, 1879." On the trial plaintiff obtained judgment, from which defendant has appealed. Appellant's counsel are in error with respect to the allegations in the petition, occasioned by their having overlooked the amendment to the petition made at the April term, 1882, above noticed.

The testimony introduced by the plaintiff shows that the lands were assessed by the county assessor for the years 1872 to 1876, inclusive, to one Blakely Wilson. Wilson is not shown to have ever had any title or claim, while the evidence for the defense, consisting of a patent from the United States to defendant, shows that the title to the lands remained in the United States until the 23rd of January, 1877, the date of the patent. Prior to that time, the defendant was the equitable owner of the lands, and, if the lands were subject to taxation before 1877, a question we will not consider, they should have been assessed in the name of defendant. This court held in *Abbott v. Lindenbower*, 42 Mo. 167, that "An assessment in the name of a

person who neither was, nor ever had been, the owner of the property, would be an utterly void assessment."

But another objection to the assessments for the years. 1872 to 1877, inclusive, is, that it seems to have been done by the county assessor, while by the act of 1871, under which alone he appears to have acted, it was provided that all railroads then constructed, or in process of construction,. or which should thereafter be constructed in this State, and. all property owned by any railroad company or corpo-- ration, should be subject to taxation for State, county and. other municipal or local purposes to the extent and in the manner therein provided. 2 Wag. Stat., p. 1214 b, § 1.. By subsequent sections, with the details of which it is un- necessary to encumber this opinion, the State Treasurer,. State Auditor and the Register of Lands were constituted a board of equalization of railroad property, and required to meet on the first Monday in May of each year and proceed. to adjust and equalize the aggregate valuation of each rail- road company and apportion the aggregate valuation to the several counties as therein prescribed. This result was. to be certified to the county courts of the several counties. concerned, whose duty it then was to make the levy for county purposes on such value, etc.

There was no evidence that the State board ever per- formed its duty with respect to the property of this com- pany. On the contrary, the clerk of the county court tes- tified that " there were no certificates in his said office on. file or otherwise showing any assessment or equalization, or otherwise fixing the value of the lands in controversy by the State Board of Equalization nor from the Auditor prior to the year 1877, nor any action by the State Board of Equalization." Upon what theory the judgment was. rendered in favor of plaintiff, we cannot conjecture. Re- spondent has filed no abstract or brief, and the record does. not disclose the ground upon which the defendant was held liable.

The judgment is reversed and the cause will be re-

manded in order that plaintiff, if he has a case against the defendant, may have another opportunity to make it out. All concur.