THE STATE ex rel. A. PARKER KERSEY, Collector of Revenue, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

Division One, June 10, 1924.

1. **PLEADING:** Amendment at Close of Evidence: Surprise. The petition in a suit for taxes contained an allegation of the value of defendant's property in the State, and at the close of the evidence the court permitted an amendment showing the assessed value of its property in the county. To this defendant objected that the amendment came too late, but being asked if it desired a continuance at the cost of the county announced that it did not. *Held*, no error.

2. **TAXATION:** Railroad Tax Book: Description of Property. Where the assessment made by state authorities includes a correct description of defendant's property subject to taxation in the county,

State ex rel. Kersey v. West. Union Telegraph Co.

and the value assessed is duly certified and the certificate accurately describes the assessed property, the levy is not void because neither the tax-bill nor the railroad tax book describes defendant's property in the county. The statute (Sec. 13032, R. S. 1919) which provides that the county clerk shall make out the railroad tax book does not require him to enter in it a description of the railroad, telegraph and telephone property in his county which is assessable by the state board, but only requires him to place in the book "first, the total valuation of the roadbed and rolling stock of each railroad company, as equalized and apportioned to such county by the state board," and as to a telegraph company the total valuation of miles of wire, etc.

3. ——: ——: **Suggested Form.** The fact that some one has printed a form of railroad tax book which calls for more than the statute requires does not amend the statute.

4. ——: ——: **Fieri Facias.** The provision in the statute requiring the clerk, after judgment for taxes, to describe in his *fieri facias* "the property against which such judgment is rendered" does not alter the statute which does not require the county clerk, in making out the railroad tax book, to enter therein a description of the assessed property in his county. What a *fieri facias* is specifically required to contain is not relevant to a decision of what the tax book or the tax-bill is required to contain.

5. ——: ——. **Statutory Form of Petition.** A statutory form of the petition which includes a description of the property assessed, in case of suit, is not a requirement that the railroad tax book made out by the county clerk shall contain such description.

6. ——: **Excessive Levy.** A levy of forty cents on the hundred-dollar valuation for general county purposes and twenty cents road taxes, and twenty-five cents special road taxes under the amendment of 1908, exceeds the constitutional maximum rate by ten cents on the hundred dollars.

7. ——: **Levy in Behalf of Road District.** Where the evidence does not show the boundaries of a special road district or what portion of defendant's property is situated therein, there is no foundation on appeal for a ruling that a levy for county purposes is void because it was made to apply to all of defendant's property in the county since it is not shown it is not all in the district.

8. ——: **Recovery by City.** There can be no recovery in behalf of a city of taxes levied by the county court where it does not appear that any levy was made for the benefit of the city.

9. ——: **Excessive School Tax.** A levy of 120 cents on the hundred-dollar valuation, voted by a school district for ordinary school purposes, exceeds the constitutional maximum rate by twenty cents. And where the county court fixed the school tax rate

State ex rel. Kersey v. West. Union Telegraph. Co.

at 146 cents per one hundred dollars of valuation of defendant's property, and among the certificates filed with the county clerk by fifty-three school districts are several levies in excess of the largest rates permitted by the Constitution, but the summaries are not full enough to show the excesses in such a way that the lawful rates can be separated from the unlawful, there is no basis, in a suit by the State at the relation of the county collector, for the substitution of a valid average rate by the Supreme Court, and no data by which the excesses may be reduced, and a judgment upholding the levy cannot be sustained.

10. ———: Evidence. All Orders of County Court. In the trial of a suit for taxes brought by the State at the relation of the county collector against a telegraph company, all orders of the county court which, taken together, showed the entire levy in the county, were admitted in evidence, *Held*, that the admission of those which did not refer specifically to property on the railroad tax book was not prejudicial, since the order which made the levy on defendant's property must stand or fall, as a levy, upon its own contents, as a matter of law, and is neither strengthened nor weakened by orders pertaining to other matters.

11. ———: ———: Tax Book and Tax-bill. The tax book and the tax-bill are properly admitted in evidence in the suit for taxes, but their legal effect as evidence is a matter for judicial determination.

12. ———: ———: Letter as Admission. In the trial of a suit for taxes a letter which purports to discuss, with defendant's authority, its liability for the taxes sued for, is not admissible in the absence of a showing that the writer was acting for defendant; and even though he is shown to have been acting for defendant, so much of the letter as relates to an effort to compromise matters concerning which no admission of liability is made is not admissible as an admission.

13. INSTRUCTIONS: Finding of Facts. Instructions and findings of fact are not of the greatest consequence where all the evidence determinative of the case is documentary; and the findings of fact, when requested and made, render requests for instructions unimportant. And an assignment on appeal that the findings do not cover all the facts is unavailing unless attention is called to specific facts omitted, and particularly so if the record shows no objection was made in the trial court to the findings.

Headnote 1: Pleading. 31 Cyc. 401. Headnotes 2 to 8: Counties: 2 to 5, 15 C. J. sec. 351; 6, 15 C. J. sec. 349; 7 and 8, 15 C. J. sec. 352 (1926 Anno). Headnotes 10 and 11: Taxation: 10, 37 Cyc. 1255; 11, 37 Cyc. 1252, 1253 (1926 Anno). Headnote 12: Evidence, 22 C. J. secs. 347, 493. Headnote 13: Appeal and Error, 3 C. J. secs. 766, 1531.

Appeal from Pemiscot Circuit Court.—*Hon. Sterling Mc-Carty*, Judge.

REVERSED AND REMANDED.

. *Ward & Reeves* for appellant.

(1)   The record testimony shows that the plaintiff' has no cause of action whatever, and the trial court therefore erred in finding for the plaintiff for any sum whatever.   The four separate and distinct orders of the county court offered in evidence by the plaintiff, and which the county clerk testified were all the orders made respecting the levy of taxes for the year 1920, show that there was never any levy made upon defendant's distributable property in Pemiscot County.   (a)   "Laws for the assessment and collection of the revenue should be construed with a reasonable strictness."   Noll v. Morgan, 82 Mo. App. 118; Kansas City v. Railway, 81 Mo. '285; State v. St. L. County Ct., 13 Mo. App. 53; Mfg. Co. v. St. Louis, 238 Mo. 279; State v. Railway, 149 Mo. 645; Railroad v. Apperson, 97 Mo. 300.   (b)   Telegraph companies are required to be assessed the same way and manner as railroad companies, and all the provisions of law with reference to the assessment and collection of taxes as to railroad companies apply to telegraph companies.   Article 14, Ch. 19, R. S. 1919; Sec. 13056, R. S. 1919.   (c)   The county court must levy the taxes against railroad, telegraph and telephone companies and a legal levy is a necessary prerequisite to a valid railroad tax book.   No tribunal or officer other than the county court, can make this levy.   Secs. 13030, 13056, R. S. 1919; State ex rel. v. Railway, 135 Mo. 618; Railroad v. Apperson, 97 Mo. 300; City of Kansas v. Railway, 81 Mo. 285; Yost v. County, 236 U. S. 50; Seibert v. Lewis, 122 U. S. 284.   (d)   A proper extension of the taxes on a book to be known as the railroad tax book is a necessary prerequisite to their collection.   State ex rel. v. Railway, 117 Mo. 1; State ex rel. v. Railway, 135

Mo. 77.  (e)  When these prerequisites are complied with, that is, a proper and valid levy by the county court and a proper and valid extension by the county clerk in the railroad tax book, then, and not until then, are the taxes legally assessed and levied.  And thereupon such taxes become a lien upon the property in the county, which property must be described in the assessment. Secs. 13036, 13042, R. S. 1919; State ex rel. v. Ry. Co., 114 Mo. App. 1; State ex rel. v. Davis, 131 Mo. 457.  (f) Neither the orders of the county court, nor the railroad tax-bill sued upon contain any description whatever of the defendant's distributable property in Pemiscot County.  That is, none of them contained the number of miles or any other description of defendant's distributable property in said county, nor do any of them state or show the value of defendant's distributable property in the county.  True, the petition, as amended, does contain this description, that is, the number of miles and the value of defendant's distributable property in Pemiscot County, and in some of its municipal subdivisions; but the petition in this necessary averment must be supported by the evidence, that is, the description as set out in the assessment and levy (which is the order of the county court), in the railroad tax book and in the tax-bill, must sustain and prove the description as laid in the petition.  State ex rel. v. Railway, 101 Mo. 136; Railway v. Apperson, 97 Mo. 300; State ex rel. v. Railway, 135 Mo. 618; State ex rel. v. Burroughs, 174 Mo. 700; State ex rel. v. Railway, 114 Mo. 1; State ex rel. v. Liney, 192 Mo. 49; State ex rel. v. Williams, 216 S. W. 535; State ex rel. v. Davis, 131 Mo. 457; Secs. 13029-32, 13036, 13040-42, R. S. 1919.  (2)  The finding and judgment of the trial court was excessive, and some of the items of taxes for which recovery was permitted cannot stand.  (a) The amounts attempted to be levied, or rather the amount sued for herein, for which amounts judgment was entered against defendant, are: road tax, twenty cents; special road and bridge tax, twenty-five cents; county tax, forty cents, making a total of eighty-five cents on the $100

valuation, which is ten cents above the constitutional limit. State ex rel. v. Railway, 270 Mo. 261; Board of Com. v. Peter, 253 Mo. 520; State ex rel. v. Railway, 276 Mo. 441; State ex rel. v. Railway, 251 Mo. 134. (b) The school tax sued for is void because the uncontradicted evidence is that the rate obtained by the county court, to-wit, $1.46 on the $100 valuation, was obtained by including excessive levies of five cents to forty cents on the $100 valuation over and above the constitutional limit in nineteen of the fifty-three school districts in the county. Three of these districts were city or town districts and the constitutional maximum was 100 cents, and in one of these the levy was 120 cents; in one 115 cents, and in the other 140 cents. The other sixteen were country districts and the constitutional limit was sixty-five cents, and the levy ranged from seventy cents to 100 cents. The rate thus obtained by the county court is illegal and void as to all of these school taxes. This rate, to-wit, $1.46, attempted to be collected on the defendant's property was ascertained by adding together these unconstitutional rates, as shown by the testimony of the county clerk, and in conformity with Sec. 13031, R. S. 1919. The courts have no authority to correct these rates, and the whole levy for school taxes is void. Harrington v. Hopkins, 288 Mo. 1; Jacobs v. Cauthorne, 238 S. W. 443. State ex rel. v. Railway, 149 Mo. 635; State ex rel. v. Railway, 135 Mo. 618; Harrington v. Hopkins, 231 S. W. 263. (c) The state board is required to apportion the aggregate value of the property of the company in the State to each county, municipal township, city or incorporated town in which the property is located, according to the ratio which the number of miles of wire in such county, municipal township, city or incorporated town shall bear to the whole length in the State. Secs. 13024, 13056, R. S. 1919. And this apportionment giving the number of miles and value in each county and local taxing district, must be certified by the state board to the county courts. Section 13026. Cities and towns are also required on or before August 10th

of each year to certify to the county courts the rates levied for municipal purposes for that year. Section 13029. After the receipt of these certificates the taxes are required to be levied by the county court. The certificate from the state board offered in evidence by the plaintiff in this case does not show any distributable property of the defendant in Little Prairie Special Road District. In other words, all of the distributable property of the defendant in Pemiscot County is assessed at a rate of forty cents for this local road district, and the defendant is charged with payment of the resulting tax, though less than half of the distributable property in Pemiscot County is located in Little Prairie Special Road District. There can therefore be no recovery for alleged taxes due Little Prairie Special Road District. Sec. 13029, R. S. 1919; State ex rel. v. Railway, 101 Mo. 144; State ex rel. v. Railway, 135 Mo. 77; State ex rel. v. Railway, 135 Mo. 618. (d) There was a certificate filed by the city of Caruthersville, but the county court did not make any levy of taxes thereon. All the orders of the county court were introduced and the clerk testified that he extended the taxes on the railroad tax book under the authority of these orders, which are set out in the abstract. As there was no order of the county court levying the taxes for Caruthersville, the clerk of the county court had no authority to extend them on the tax book and his act was a nullity. Kansas City v. Railway Co., 81 Mo. 285; State v. Railway, 135 Mo. 618; Railway v. Apperson, 97 Mo. 300.

*N. C. Hawkins* for respondent.

(1) Defendant alleges that "there never was any levy made upon defendant's distributable property in Pemiscot County," for which reason it asserts the judgment should have gone for defendant. On November 5, 1920, the county court made an order, as follows: "In the matter of railroad, telegraph and telephone tax rate. It is ordered by the court that the following rate of tax-

ation be extended on the tax book of Pemiscot County, Missouri, for the year 1920, based on the assessment of ownership for the year 1919. State tax, eighteen cents; road tax, twenty cents; special road and bridge, twenty-five cents; courthouse tax, fifteen cents; school tax, $1.46; county tax, forty cents, on the $100 valuation. Hayti Special Road District tax, fifty cents; Little Prairie Special Road District tax, forty cents.'' At the time this order was made the State Tax Commission had returned to the county court a statement of its proceedings, wherein was found the distributable value of defendant's property for Pemiscot County and such paper was on file in the county court at the time this order was made. The defendant had no other property of any kind. This order could not relate to any other than the distributable value of railroad telegraph and telephone property. The property was not required to be described in the order itself, neither was it necessary to call by name the railroad, telegraph and telephone companies to which it would apply. So far as the order itself was concerned, it was alright. Orders levying a tax do not name the landowners or describe their lands. This order was not required to name the defendant or describe the property. (a) Appellant says that ''a proper extension of the taxes on the railroad tax book is a necessary prerequisite to their collection.'' There was nothing wrong with the extension. The taxes were extended and the separate amounts due the separate funds were placed under appropriate columns. The tax-bill purported to be a copy of the tax book and the tax book was offered in evidence. The tax-bill therefore goes out of this case. It was no part of the petition or cause of action to begin with. This leaves the railroad tax book alone, for consideration. Was the description sufficient in it? The railroad tax book stated the value of defendant's property, as $20,595.96, showed that the distributable value of defendant's property in Pemiscot County was $20,595.96. The railroad tax book contained the $20,595.96 in the ''distributable value'' column for

railroad property. "Distributable value" was all that the county could levy a tax upon. All the description that is necessary in the railroad tax book, in a telegraph case, is to state the amount of tax due from the owner, naming it. Its property made taxable is "franchise, and distributable value," of which there is no definite description, and cannot be. Secs. 13056, 13001, 12999, 13027, R. S. 1919. (2) It is claimed the general tax was ten cents on the $100 valuation in excess of the constitutional limit. This is a creature of the mind of local counsel and was not contended for by the chief counsel, in the beginning—the time when all constitutional questions must be raised, to be available. (3) The school taxes were figured according to Section 13031, and aside from appellant's desire to say what was necessary appear to be substantially according to law and free from constitutional excesses. (4) There was no evidence in the record showing the boundaries of the special road district or the distributable share of defendant's property therein. Defendant's statement seems to be *dehors* the record, gratuitous, and without verification. (5) All the taxes for cities except Caruthersville were found in defendant's favor, and the tax for Caruthersville was reduced from $48.51 to $4.85, and its chief counsel admitted that amount was correct. (6) The admissions of the orders and tax book certainly did defendant no harm. The tax-bill amounted to nothing. The tax book was the best evidence. (7) The letter from Mr. Whitney was proper evidence. It was not a letter of compromise or settlement. It was a voluntary admission against interest and a concession, without request, that the defendant admitted liability for $637.40 and showed that defendant's astute local counsel had dug up defenses that it did not wish to rely on or ever had in mind. The letter does not show that this attorney was not fully advised, nor is there any proof that he was not.

JAMES T. BLAIR, P. J.—This is a suit for taxes, and the petition is in the form prescribed by statute. A general demurrer was overruled, and an answer was filed which raised constitutional questions with respect to some of the taxes levied. At the close of the evidence the court permitted respondent to amend the petition so as to bring the allegation with respect to appellant's property in Pemiscot County into exact accord with the certificate of the assessing state board. Appellant requested a finding of facts, and one was made. It also asked instructions, which were refused. Judgment was given for most of the taxes sued for, and this appeal followed.

The tax-bill, the railroad tax book, the orders of the county court levying taxes, and the certificates of fifty-three school districts to the county clerk were all in evidence. A letter was put in evidence which purported to discuss, with appellant's authority, liability for the taxes sued for. There was some oral testimony, but no question now raised depends upon this. The nature of the questions discussed by counsel does not require a further detail of the facts except as they appear in the subsequent paragraphs.

I.  The petition at first contained an allegation of the value of appellant's property in Pemiscot County which was, in fact, the value of all its Missouri property. At the close of respondent's evidence the court permitted an amendment which reduced these alleged values to the relatively insignificant sum which represented the value assessed by the state board on appellant's Pemiscot County property. The objection was that it came too late. Appellant was asked if it desired a continuance at the county's cost and announced it did not ask that. There was no error.

*Amending Petition.*

II.  It is contended there was no valid levy. It is argued the levy made was void because neither the tax-bill nor the railroad tax book described appellant's prop-

erty in Pemiscot County. It is not denied that the assessment made by state authorities (Secs.

Railroad
Tax Book. 13056, 13001 et seq., 12847, par. 6, R. S. 1919) included a correct description of the property of appellant subject to taxation in Pemiscot County, nor that the value assessed was duly certified as required (Secs. 13026, 12847, R. S. 1919), nor that this certificate accurately described the assessed property. Section 13032, Revised Statutes 1919, which provides that the county clerk shall make out the railroad tax book, does not require him to enter in it a *description* of the railroad, telegraph and telephone property in his county which is assessable by the state board. That description appears in the record and certificate of the assessing board. The section, in so far as it concerns the assessment made by the state board, requires merely that the clerk shall place in the railroad tax book, "first, the *total valuation* of the roadbed and rolling stock of each railroad company, as equalized and apportioned to such county by the state board," etc. In this case (Sec. 13056, R. S. 1919) this requirement calls for the "total valuation" of miles of wire, etc. When the Legislature desired a description of property in the railroad tax book it expressly provided for it in the same section with respect to certain railroad property which is assessed locally. The fact that some one has printed a form of railroad tax book which calls for more (however pertinent it may seem) than the statute requires does not amend the section. The evidence tends to show such descriptions are not put in the books further than required. Nor does the provision (Sec. 13042, R. S. 1919) which requires the clerk, after judgment for taxes, to describe in his *fieri facias* "the property against which such judgment is rendered" support this argument of appellant. What a *fieri facias* in a tax suit is specially required to contain is not relevant to the present question. The fact that the valuation appeared in the wrong column of the railroad tax book is not a fatal defect. The whole entry shows clearly that the value given is the value assessed by the state board. The only other

assessment that could have appeared would have been - one by local assessors on locally assessable property. On it face it appears the value set down is not of that kind. The descriptions of local properties, essential to such assessments, do not appear. There are apportionments of local values to several towns and villages for the purpose of forming a basis for imposing municipal taxes, and the total of these taxes is separately stated. The statutory form of petition includes a call for description of the properties assessed, in case of suit, but this, if a requirement at all, is one as to pleading and not as to the form of the tax book, which is provided in a previous section, as pointed out. It was the question of pleading which was discussed in State ex rel. v. Railway, 101 Mo. l. c. 144. Appellant cites other cases which are decided under the provisions of the general revenue law respecting the taxation of property not included in the articles which govern in this case. [State ex rel. v. Burrough, 174 Mo. 700; State ex rel. v. Railroad, 114 Mo. 1; State ex rel. v. Linney, 192 Mo. l. c. 52, 53; State ex rel. v. Williams, 216 S. W. 535.] The question in State ex rel. v. Railroad, 135 Mo. l. c. 628, was different. In that case the county clerk, without levy or authority, had attempted to extend certain school taxes for the Kansas City district. The same ruling is made in St. L. & S. F. Ry. v. Apperson, 97 Mo. l. c. 305 et seq. The record in this case shows a levy by the county court on railroad, telegraph and telephone property, and the rates fixed by it are those extended on the tax book.

III. The court levied forty cents per $100 for general county purposes; twenty cents "road tax;" twenty-five cents special road tax under the amendment of 1908, and a further tax for interest on bonds duly voted. The levy was attacked in the answer on constitutional grounds. The general levy, the special road tax levy under the 1908 amendment, and the bond interest levy are valid. The "road tax" levy of twenty cents is under a special statutory provi-

**Excessive Levy.**

sion. It carries the total ten cents beyond the constitutional limit. For that reason appellant contends this excess of ten cents on the $100 is void. It is so, and is not recoverable.

IV. Appellant urges that the forty-cent levy for Little Prairie Special Road District is void because it was made to apply to "all of defendant's property distributable to Pemiscot County' . . . though less than half of the distributable property is located in Little Prairie Special Road District." The evidence does not show the boundaries of the special district and does not tend to show whether all or "less than half" of the property in question is situated in it. So far as concerns the question raised, there is no record foundation for it. The $4.85 sued for and recovered in behalf of the city of Caruthersville cannot be allowed since it does not appear any levy was made for the benefit of that municipality.

*Distribution.*

*For City.*

V. The 'school tax rate was fixed by the county court at 146 cents per $100 of valuation shown on the railroad tax book, in attempted compliance with Section 13031, Revised Statutes 1919. Among the fifty-three school districts which filed certificates with the county clerk there appear several levies which are indisputably in excess of the largest rates permitted by the Constitution. For instance, in District No. 5 the record shows there had been an attempt to vote a tax of 120 cents per $100 valuation for ordinary school purposes. The board attempted to levy the full amount of this, as well as a much larger rate for building fund, sinking fund and payment of accrued interest. Counsel contends the rate first mentioned was twenty cents too high, and in this he is correct. [Harrington v. Hopkins, 288 Mo. 1.] The record shows like excess levies in several other districts. It is contended there are still other districts in the same condition, but the summaries are not full enough to show the amounts

*School Tax.*

of the excesses in these in such way that the lawful rate can be separated from the unlawful. Even if it be held that the circuit court could reduce the levy so as to exclude parts of rates in excess of constitutional limits (State ex rel. v. Railroad, 149 Mo. l. c. 644, 645), yet this court cannot substitute a new average rate because the record does not give all the necessary information. Enough appears to show the average rate used is excessive because levies exceeding constitutional limitations went into it. There is a remedy provided by the statute, but it is not available in this suit to sustain the present levy. The judgment as to school taxes cannot be upheld.

VI. The matter of instructions and findings of fact are not of the greatest consequence since practically all the evidence determinative of the case is documentary. In addition, the findings of fact, when requested and made, rendered requests for instructions unimportant. [Kostuba v. Miller, 137 Mo. l. c. 173.] Counsel say the findings do not cover all the facts, but counsel do not call attention to any specific fact omitted, and the record does not show any objection made at the time, on that ground, in the trial court.

*Instructions and Findings.*

VII. The several orders which, taken together, showed the entire levy in Pemiscot County, were admitted in evidence. The admission of those which did not refer specifically to property on the railroad tax book was not prejudicial. The order which made the levy on appellant's property must stand or fall, as a levy, on its own contents, *as a matter of law*, and is neither strengthened nor weakened by orders about other matters. If that levy is good even a jury in the cause ought to have been so instructed, and *vice versa*. The tax book and tax-bill were properly admitted. Their respective *effects* as evidence is another matter. The letter of Mr. Whitney was not admissible in the state of the record at the time. No showing was made that he was

*Evidence.*

acting for the appellant. The letter may become admissible with respect to the express admissions of liability it contains, upon another trial. With respect to that part of it which seems to relate to an effort to compromise matters concerning which no admission of liability is made, there seems to be no reason to doubt that the usual rule would apply.

The judgment is reversed and the cause remanded for proceedings not out of harmony with this opinion. All concur.